ORIGINAL

FILED
AUG 19 2008
U.S. COURT OF FEDERAL CLAIMS

THE UNITED STATES COURT OF FEDERAL CLAIMS

FRED RIGGS, DONNA SINGER, AL DICKSON,
ALL INDIANS WITHIN THE UTAH ANETH
EXTENSION OF THE NAVAJO NATION
*Plaintiffs,*

v.

UNITED STATES OF AMERICA
*Defendants.*

NO. 08-592 L

**MEMORANDUM IN SUPPORT OF THE PLAINTIFFS' COMPLAINT FOR DAMAGES IN THE AMOUNT OF $85, 220, 000.00**

SUSAN ROSE (UTAH BAR NO. 7985)
ATTORNEY FOR THE PLAINTIFFS
9553 South Indian Ridge Drive
Sandy, Utah 84092
susan_rose@comcast.net
(801) 572-3363; (801) 674-9304

THE UNITED STATES COURT OF FEDERAL CLAIMS

FRED RIGGS, DONNA SINGER, AL DICKSON,
ALL INDIANS WITHIN THE UTAH ANETH
EXTENSION OF THE NAVAJO NATION
*Plaintiffs,*

v.

UNITED STATES OF AMERICA NO. ___________________
*Defendants.*

**MEMORANDUM IN SUPPORT OF THE PLAINTIFFS' COMPLAINT FOR DAMAGES IN THE AMOUNT OF $85, 220, 000.00**

SUSAN ROSE (UTAH BAR NO. 7985)
ATTORNEY FOR THE PLAINTIFFS
9553 South Indian Ridge Drive
Sandy, Utah 84092
susan_rose@comcast.net
(801) 572-3363; (801) 674-9304

# TABLE OF CONTENTS


I. CHARGES 1

II. JURISDICTION 1

III.OVERVIEW 3

IV. PROCEDURAL HISTORY 4

V. ALL FEDERAL COURTS REFUSE TO UPHOLD NN COURT ORDERS 5

VI. APPLICABLE LAW 5

*VII. OTHER PERTINENT MATERIAL FACTS* 6

*a. Geography* 6

*b. NN Court jurisdiction* 7

*c. NN History Is the Antithesis of the Montana Doctrine* 8

*d. NN Court Orders Designates Plaintiffs to Seek Federal Court Enforcement of the NN Actions in Behalf of All Protected by the NN Actions* 10

*e. Bad Men Among the Whites are Navajo Nation* 10

*f. NN Due Process and Equal Treatment* 11

*g. NN Rule 65 Permanent Liability Findings* 12

VIII. COUNT ONE: THE IMPLIED DIVESTITURE DOCTRINE VIOLATES THE EXPRESS AND IMPLIED TREATY-PROMISES AND FIDUCIARY GUARDIANSHIP DUTY OF PROTECTING SELF-DETERMINATION, RESIDUAL INHERENT SOVEREINGTY,AND PROMISES OF PEACE, HAPPINESS, PROSPERITY 15

IX. COUNT TWO: VIOLATIONS OF NETWORK OF LAW ARE VIOLATIONS OF US FIDUCIARY DUTY TO INDIVUAL INDIANS AND THE NAVAJO NATION 17

*a. Article II Treaties, Executive memorandum and orders, Government to Government agreement, NNboundary extension Statute; UN Treaties supported by statutes* 20

*b. Executive Branch Upholds NN Court Authority over Non Indians By Not Expressly Denying it, and by Executing Laws Supporting It* 23

*c. Article I Congressional Statutes Mandating NN Equal Protection of Laws for All Persons Within the NN, excluding all other Law and Courts* 25

**X. COUNT THREE: LACK OF GOOD FAITH AND FAIR DEALING AND FIDUCIARY DUTY** 26

**XI. COUNT FOUR: FIFTH AMENDMENT TAKINGS** 36

**XII. COUNT FIVE: BREACH OF ACCORD AND SATISFACTION** 37

**XIII. STANDING** 38

**XIV DAMAGES PRAYER FOR RELIEF** 39

**CERTIFICATE OF SERVICE** 40

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*, 468 U.S. 737, 751 (1984) 38

*Anthony v. United States*, 987 F.2d 670 (10th Cir. 1992) 33

*Arizona v. United States*, 575 F.2d 855, 863 (Ct. Cl. 1978) 18

*Atkinson Trading Post v. Shirley*, 532 U.S. 645, 653 (2001) 16

*Barseback Kraft AB v. United States*, 121 F.3d 1475, 1479 (Fed. Cir. 1997) 18

*Burlington Northern & Santa Fe Ry. Co. v. Burton*, 270 F.3d 942 (10th Cir. 2001) 34

*Clark v. Barnard*, 108 U.S. [436, 2 S.Ct. 878, 27 L.Ed. 780] (1883). 7

*Cook County, Illinois v. U.S. ex rel Chandler*, 538 U.S. 119 (2003) 34

*Cuyahoga Metropolitan Housing Authority v. United States*, No. 01-46C (Fed.Cl. 09/22/2003) 8

*Dames & Moore*, 453 U.S., at 679-680, 101 S. Ct. 2972, 69 L. Ed. 2d 918 2

*Detroit v. Detroit Citizens' Street Ry. Co.*, 184 U.S. 368, 382 (1902) **19**

*Dodge v.Nakai,* 298 F.Supp. 17 (Ariz.dist.1968) **7,27**

*Erie R. Co.* v. *Tompkins*, 304 U.S. 64, 78 (1938) **32**

*Ex Parte Crow Dog*, 109 U.S. 556, 557, 572 (1883) **34**

*Franconia Associates v. United States*, 536 U.S. 129, 141 (2002) **4**

*Fortec Constr. v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985) **18**

*Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir.1991) **16**

*Home Building & Loan Association v. Blaisdell,* 290 U.S. 398 (1934) **8**

*Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96 (1990) **2**

*Kinney v. Clark*, 1844 U.S. LEXIS 322,*;43 U.S. 76 **33**

*Lone Wolf v. Hitchcock*, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903) **34,38**

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) **38**

*Lynch v. United States,* 292 U.S. 571, 579 (1934) **4**

*MacArthur v. San Juan County*. 2000U.S.Dist. LEXIS 16859 (D. Utah, Oct. 30, 2000) **5**

*MacArthur v. San Juan County*, 2002 U.S. App. LEXIS 20987,*;309 F.3d 1216 **5**

*MacArthur v. San Juan County*, 391 F. Supp. 2d 895, 2005 U.S. Dist. LEXIS 31702 (D. Utah, 2005) **(MacArthur 2005)** **5**

*MacArthur v. San Juan County* 2007 U.S. App. LEXIS 17010,*;495 F.3d 1157 **(MacArthur 2007)** **5**

*Macarthur v. San Juan County,* 2008 U.S. LEXIS 1381 (U.S., Feb. 19, 2008) **5**

*MacArthur v. San Juan County* , case no. 2:00cv 0584 July 2, 2008. **5**

*Marbury v. Madison*, 1 Cranch 137, 147 (1803) **38**

*Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982) **19**

*McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164 (1973) **16**

*Medellin v. Texas*, 552 U.S. ___ (2008) (No. 06-984) **2,5**

*Miner Electric, Co. Inc. v. Muscogee Nation*, No. 06-5216 (10th Cir. 09/19/2007) **2**

*Missouri v. Holland*, 252 U.S. 416, 433, 40 S.Ct. 382, 64 L.Ed. 641 (1920) **2**

*Mobil Oil Exporting & Producing, S.E., Inc. v. United States*, 530 U.S. 604 (2000) **4**

*Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) **16**

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. at 851, 105 S.Ct. 2447, 85 L.Ed.2d 818 **16**

*Navajo Nation v. United States*, (No. 2006-5059 (Fed. Cir. 09/13/2007) *passim*

*Navajo Tribe v. Udall*, 306 F. 2d 819 (C.A.D.C. 1962), cert. den. 372 U.S. 908. **24**

*Nevada v. Hicks*, 533 U.S. 353, 376, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) **16**

*Northrop Grumman Corp. v. Goldin*, 136 F.3d 1479, 1483 (Fed. Cir. 1998) **18**

*Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 458-59 (2001) **18**

*Perry v. United States*, 294 U.S. 330, 351 (1935) **4**

*Riggs v. San Juan County*, 539 U.S. 902, 2003 U.S. LEXIS 4286 (2003) **5**

*San Carlos Irrigation and Drainage District v. United States*, 877 F.2d 957 (Fed. Cir. 1989) **18**

*San Juan County v. Riggs*, 539 U.S. 902, 2003 U.S. LEXIS 4287 (2003) **5**

*San Juan Health Servs. v. Riggs*, 539 U.S. 902, 2003 U.S. LEXIS 4288 (2003) **5**

*Santa Clara Pueblo v. Martinez* 436 U.S. 49, 55, 67-68, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) *passim*

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) **38**

*Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997); **16**

*Superior Oil Co. v. Merritt*, 619 F. Supp. 526 (1985) **2**

*Tee-Hit-Ton Indians v. United States*, 120 F. Supp. 202, 204 (Ct. Cl. 1954) **38**

*Tri-State Motor Transit Co. v. United States*, 39 Fed. Cl. 485, 501 (1997). **2**

*W & D Ships Deck Works, Inc. v. United States*, 39 Fed. Cl. 638, 647 n.7 (1997) 1

*United States v. Belmont*, 301 U.S. 324, 330, 57 S. Ct. 758, 81 L. Ed. 1134 (1937) 2

*United States v. Lara*, 541 U.S. 193, 200–201, (2004) 16

*United States v. Mitchell*, 463 U.S. 206, 217 (1983) 2

*United States v. Pink*, 315 U.S. 203, 229, 62 S. Ct. 552, 86 L. Ed. 796 (1942) 2

*United States v. Testan*, 424 U.S. 392, 398 (1976) 1

*Veix v. Sixth Ward Building & Loan Association of Newark*, 310 U.S. 32 (1940). 8

*Warren Trading Post Co. v. Arizona Tax Comm'n*, 380 U.S. 685, 690 (1965) 16

*Williams v.Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) 16

*Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1578 (Fed. Cir. 1997), cert. denied, 524 U.S. 951 (1998). 19

**Treaties**

U. S. –Mexico Treaty of Guadalupe Hidalgo 20

United States -Navajo Nation Treaty of 1849 September 9, 1849, 9 Stat. 974,Ratified September 9, 1850. Proclaimed Sept. 24, 1850 20

United States -Navajo Nation Treaty 1868 (June 1, 1868 15 Stat. L. 667. Ratified July 25, 1868. Proclaimed Aug. 12, 1868) 20

U.N. International Covenant on Civil and Political Rights (UNICPCR) 2200A(xxi) OF 16 Dec. 1966 entry into force **23 March 1976**, in accord with article 49. UNICPCR Part 1 Art. 1, sec. 3.Part III, Art. 14 Sec. 1. 24-25

**AGREEMENT**

Navajo Nation-United States BIA Indian Self Determination Act Sovereign to Sovereign agreement (25 U.S.C. 450(a)-(n) 1, 36

**EXECUTIVE ACTIONS, ORDERS, MEMORANDUMS**

"*Government–to–Government Relations with Native American Tribal Governments:Memorandum for the Heads of Executive Departments and Agencies,* 59 Fed.Reg. 22951 (1994); 19 Weekly Comp. of Pres. Doc. 98 (1983) 23

"United States Transmitting Recommendations for Indian Policy, dated July 8,1970, H.R. Doc. No. 91–363, 91st Cong., 2d Sess. (1970), *President Richard M. Nixon*") 23

Department of Justice Policy on Indian Sovereignty and Government–to–Government Relations, 61 Fed.Reg. 29424 (June 10, 1996), *current version available at* http://www.usdoj.gov/otj/sovtrb.htm; **23**

Memorandum for the Heads of Executive Departments and Agencies: Government–to–Government Relationship with Tribal Governments, dated September 23, 2004,*available at* http://www.whitehouse.gov/news/releases/2004/09/20040923_4.html **23**

Executive Order 13084 of May 14, 1998 [Federal Register: May 19, 1998 (Volume 63, Number 96)] **23**

Executive Order 13175 November 6, 2000 **23**

**STATUTES**

The Indian Civil Rights Act of 1968, Pub.L. No. 90–284, 82 Stat. 77 (1968), 25 U.S.C.A. §§ 1301–1326 (2001) ("ICRA") *passim*

*25 U.S.C. 450 et seq.* **25**

25 U.S.C. §§450a-n(Indian Self Determination Act contracts) **25**

Tribal Self–Governance Act of 1994, Pub.L. 103–413, title II, 108 Stat. 427 (1994) (*codified at* 25 U.S.C. §§ 458aa–458hh (2000) **25**

Indian Tribal Regulatory Reform and Business Development Act of 2000; Pub.L. No. 01–511, Title VIII, § 8077(b), (c), 104 Stat. 1892 (1990), *codified at* 25 U.S.C.A. §§4301 et seq. and note (2001) **26**

Indian Tribal Justice Act of 1993, Pub.L. No. 103–176, 107 Stat. 200, *codified at* 25 U.S.C.A. §§3601 *et. seq.* (2001) **26**

Indian Tribal Justice Technical and Legal Assistance Act of 2000, Pub.L. No. 106–559, 114 Stat. 2778,*codified at* 25 U.S.C.A. §§ 3651 *et seq.* (2001) **26**

25 U.S.C. §3631 et seq. **26**

25 U.S.C. §111 **26**

8 U.S.C. §1401(b) **26**

18 USC §1151 **26**

**28 U.S.C. §1491 (a)(1)** **1-2**

**28 U.S.C. §1505** **1-2**

"An Act to Permanently Set Aside Certain Lands in Utah as an Addition to the Navajo Indian Reservation, and for Other Purposes," Act of March 1, 1933, ch. 160, 47 Stat. 1418 (1933), 5 Charles J.Kappler, *Indian Affairs: Laws and Treaties* 326–327 (1941), *as amended by* Pub.L.No. 90–306, 82 Stat. 121 (1968) (the "1933 Act") **7,24**

US Chapter570 August 9, 1937. | [H. R. 6958.] 50 Stat., 564 **7**

*Utah Enabling Act and Constitution Art. III 'ordinance' disclaimer provisions* **25**

## US CONSTITUTIONAL PROVISIONS

Articles I 1

Article II 1

Article III *passim*

Article IV 1

Article VI 1

5th Amendment 1,36

## OTHER SOURCES

Federalist Papers 78, 80, 84, 3, 7, 25 2

Kappler's Indian Affairs 7

72nd Congress 1st session Document 64 Senate Report 7

.http://www.latimes.com/news/nationworld/nation/la-na-navajo19nov19,0,1645689.story?page=8 15

http://oversight.house.gov/story.asp?ID=1560 15

http://www.radiationcontrol.utah.gov/Board/Agenda.pdf 15

David H. Getches, Charles F. Wilkinson & Robert A. Williams, Jr.,

*Cases and Materials on Federal Indian Law* 225 (5th ed.2005).

Charles Wilkinson, *Blood Struggle: The Rise of Modern Indian Nations* (2005); Vine Deloria, Jr. & Clifford Lytle, *The Nations Within: The Past and Future of*

*American Indian Sovereignty* (1984) 23

*Indian Self Rule* (Kenneth R. Philp, ed.1986) 23

1 American Indian Policy Review Comm'n, *Final Report* at 69–82.") 23

## COMPLAINT

1. NOW COMES THE PLAINTIFFS, by and through undersigned counsel, pursuant to the Court of the Federal Claims Rules of Civil Procedure, hereby allege, the following is true according to their best belief and information:

### I. CHARGES

2. Express and implied contract; accord and satisfaction; prima facie breach; breach of contract; breach of the United States (" US") fiduciary duty; breach of good faith and fair dealing; repudiation of treaties and contracts; illegal contracts; and violation of U. S. Constitution Articles I, II, VI; BIA-adopted and partially funded; NN(NN) inherent sovereign law; U. S. Const. 5th Amend. Takings; Damages.

### II. JURISDICTION

3. This Court has jurisdiction to entertain this Complaint by and through Article I of the United States ("US") Constitution, 28 U.S.C. §1491 (a)(1) [[1]] and 28 U.S.C. §1505 (Indian Tucker Act), and the US Constitution Fifth Amendment, and all the following law in support thereof.. However, where a Treaty or agreement has a network of law supporting it, the violations thereof constitute a breach of fiduciary duty, warranting money damages, *Navajo Nation, infra.*

The pleading standard under Rules of the Court of Federal Claims, RCFC 9(h)(3) demand pleading with specificity. *See W & D Ships Deck Works, Inc. v. United States*, 39 Fed. Cl.

---

[1] Id. "The United States Court of Federal Claims shall have jurisdiction to render judgment upon *any* claim against the United States founded either upon the Constitution, or *any* Act of Congress or *any* regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." ; "[t]he Tucker Act . . . is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction . . . whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976)

638, 647 n.7 (1997); *Tri-State Motor Transit Co. v. United States,* 39 Fed. Cl. 485, 501 (1997). [[2]] 28 U.S.C. § 1491 gives power to hear claims arising under Treaties that are Senate ratified acts of Congress, as is the statute supported BIA NN Judicial Program contract with provisions by statute. 25 USC §§450(a)-(n). Unlike § 1505, §1491 is not limited as to the class of plaintiffs who may sue, and these Plaintiffs' claims arise from Treaties, as an "Act of Congress" upon an "express or implied contract with the United States," i.e. all the Treaty, Executive and Statutory provisions identified specifically below. Nothing in the terms or structure of §1491 precludes this Court's jurisdiction, or these Plaintiffs' standing. The Tucker Act and the Indian Tucker Act both constitute such waivers, but any invocation of jurisdiction under those Acts must be accompanied by a corresponding substantive claim that "can fairly be interpreted as mandating compensation by the US Government for the damage sustained." *United States v. Mitchell*, 463 U.S. 206, 217 (1983) The NN extends these protections to all people within its borders, protected by its laws. NN Bill of Rights App. Pg.16-17 passed prior to, never restricted by the 1968 ICRA that likewise upholds this promise. See, July 13, 1787 Northwest Ordinance for US good faith and fair dealing.Federalist Papers78,80,84,3,7,25.

5. Jurisdictional statutes of limitation. Plaintiffs sought in good faith to enforce the NN Court orders for eight years in US Article III Courts the oblige themselves under Article VI to uphold Treaties and Executive Agreements without state interests or municipal interests limiting these provisions, save for Indian Nation Court parties with non Indian or political subdivision defendants. A Russian Court has more full force and effect than a

---

[2] This Court must know the relevant contract terms but also the law associated therewith, how it has changed, and how Article III US Court interpretations of NN sovereign power over these Defendants, and non Indians, and minor political subdivisions, differ from all other law and harm for whom relief is sought.

US NN court by these Plaintiffs cases. [3] In the event exhaustion was unnecessary, tolling is justified due to the lack of clarity as to when exhaustion is or is not required.

6. Equitable tolling is applied "sparingly" and usually when "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96 (1990). Since this is a case of first impression, challenging Article III Courts jurisdictional authority to violate Treaties and Executive agreements and all other law, in the only Court that can hear contract damages exceeding $10,000 dollars, was unforeseen, and unknowable.

## III. OVERVIEW

**7.** These NN Court Plaintiffs are seeking damages for Article III US Courts' refusal to enforce four NN Court orders issued by NN Court sovereign power as BIA approved and ratified, mutually agreed upon. NN Plaintiffs allege the lack of enforcement of the orders is a Treaty, contract, and fiduciary duty violation of express and implied promises that NN law would be enforceable by full force and effect, the same as US law, under principals of federalism and supremacy. These violations are compensated with money damages, upon even more protective fiduciary terms than with mere private contracts[4.]

---

[3] *Superior Oil Co. v. Merritt*, 619 F. Supp. 526 (1985); *Miner Electric, Co. Inc. v. Muscogee Nation*, No. 06-5216 (10th Cir. 09/19/2007); *Medellin v. Texas*, 552 U.S. ___ (2008) (No. 06-984). See Federalist Papers 78, 80, 84, 3, 7, 25. *Dames & Moore*, 453 U.S., at 679-680, 101 S. Ct. 2972, 69 L. Ed. 2d 918; *United States v. Pink*, 315 U.S. 203, 229, 62 S. Ct. 552, 86 L. Ed. 796 (1942); *United States v. Belmont*, 301 U.S. 324, 330, 57 S. Ct. 758, 81 L. Ed. 1134 (1937). *Missouri v. Holland*, 252 U.S. 416, 433, 40 S.Ct. 382, 64 L.Ed. 641 (1920). See Federalist Papers 78, 80, 84, 3, 7, 25.

[4] *Navajo Nation, infra.* " [w]hen the United States enters into contract relations, its rights and duties therein are generally governed by the law applicable to contracts between

## IV. PROCEDURAL HISTORY

9. On April 12, 1999, a civil Complaint in behalf of these three Plaintiff whistleblowers was filed in NN District Court, District of Shiprock, case No. SR-CV-162-99-CV.[[5]] The NN Defendants counterclaimed for relief under NN law. The NN Court issued the foregoing judgments as a result of extensive hearings fully participated in by all parties.

10. NN Court Plaintiffs sought enforcement of four written orders within Article III US Courts, as entered by the NN District Court for the Shiprock, New Mexico Judicial District: (1) the "Findings, Opinion and Judgment at Preliminary Injunction," dated December 28, 1999, in *Donna Singer, et. al. v. San Juan County, et al.,* Case No. SR-CV-162-99-CV (NN District Court, Shiprock District) App. Pg. 25-45; (2) the "Order Denying Defendants' Motion to Dissolve or Modify the Preliminary Injunction Order," entered March 1, 2000 (App. Pg. 100-115; (3) the "Special Order in Aid to Satisfaction of Preliminary Injunction," signed March 6, 2000 App. Pg. 116-117; and (4) the "Order Mandating that All Defendants' to be Bound by the Preliminary Injunction Order," entered March 15, 2000 . App.Pg.118-120.

11. Under the analysis of the Federal Circuit Court in *Navajo Nation v. United States,* (No. 2006-5059 (Fed. Cir. 09/13/2007), these Plaintiffs identify the US Government's fiduciary duty to uphold, protect, and fully ratify all NN Courts actions by full force and effect or full faith and credit. The fiduciary duty under *Navajo Nation*'s Federal Circuit Court analysis is founded in the following Treaties, agreements, and a network of law.

---

private individuals." *Lynch v. United States,* 292 U.S. 571, 579 (1934); see also *Franconia Associates v. United States,* 536 U.S. 129, 141 (2002); *Mobil Oil Exporting & Producing, S.E., Inc. v. United States,* 530 U.S. 604, 607 (2000); *Perry v. United States,* 294 U.S. 330, 351 (1935).

[5] **MacArthur 2005 at 902**

## V. ALL FEDERAL COURTS REFUSE TO UPHOLD NN COURT ORDERS

12. Plaintiffs have now exhausted all US remedies and are enjoined from seeking further enforcement of the NN orders in any forum, as follows:

(a) *MacArthur v. San Juan County*, 2000U.S.Dist. LEXIS 16859 (D. Utah, Oct. 30, 2000)

*(b) MacArthur v. San Juan County*, 2002 U.S. App. LEXIS 20987,*;309 F.3d 1216 (vacate and remand for *National Farmer*'s [*infra*] analysis and application of the *Montana v. U. S.* [*infra*] doctrine) **(MacArthur 2002)**

(c) US Supreme Court certiorari denied by *Riggs v. San Juan County*, 539 U.S. 902, 123 S. Ct. 2246, 156 L. Ed. 2d 110, 2003 U.S. LEXIS 4286 (2003)

(d) US Supreme Court certiorari denied by *San Juan County v. Riggs*, 539 U.S. 902, 123 S. Ct. 2252, 156 L. Ed. 2d 110, 2003 U.S. LEXIS 4287 (2003)

(e) US Supreme Court certiorari denied by *San Juan Health Servs. v. Riggs*, 539 U.S. 902, 123 S. Ct. 2252, 156 L. Ed. 2d 110, 2003 U.S. LEXIS 4288 (2003)

(g) *MacArthur v. San Juan County*, 391 F. Supp. 2d 895, 2005 U.S. Dist. LEXIS 31702 (D. Utah, 2005) **(MacArthur 2005)**

(h*) MacArthur v. San Juan County* 2007 U.S. App. LEXIS 17010,*;495 F.3d 1157 **(MacArthur 2007)**

(i) US Supreme Court certiorari denied by *Macarthur v. San Juan County,* 2008 U.S. LEXIS 1381 (U.S., Feb. 19, 2008)

(j) *MacArthur v. San Juan County* , case no. 2:00cv 0584 orders enjoining Plaintiffs from seeking further enforcement of the NN Court orders, as issued July 2, 2008.

## VI. APPLICABLE LAW

13. Under *Navajo Nation* analysis, and a *Medellin v. State of Texas* 128 S. Ct. 1346; 170 L. Ed. 2d 190; 2008 U.S. LEXIS 2912 (treaty analysis and Article VI Constitutional

analysis) only Article VI full force and effect enforcement of NN Court orders, decrees or judgments carries out Treaty-protected NN sovereignty. Anything less limits NN sovereignty in unpredictable ways, without compensation to the NN, and without the NN being a party, without it waiving its sovereignty to be a party for a US court to diminish sovereignty, and without compensation to injured plaintiffs with no where else to go.

## VII. OTHER PERTINENT MATERIAL FACTS

### *a. Geography*

14. The NN is a US recognized sovereign Indian Nation incorporating a land size equivalent to New York, New Jersey, Connecticut, and Rhode Island.

15. For purposes of this case, the NN borders are circumscribed by mutual agreement in the Treaties of 1849 and 1868, and the 1933 Aneth Extension statute[6], whereby Utah and San Juan County agreed that the NNwas to permanently have surface rights control over ALL lands within Utah's extension, save for some mineral royalty rights under the Congressionally designated, and Utah insisted upon, Utah Navajo Trust Fund. Contrary to *MacArthur 2002, infra*, the *NN purchased the lands* and surface rights on Utah trust lands, within the Aneth Extension from Utah with $20,000 by Utah and NN and US agreement supporting the 1933 statute. This amount was reimbursed to the Nation by the

---

[6] MacArthur 2005 fn. 959 ''An Act to Permanently Set Aside Certain Lands in Utah as an Addition to the Navajo Indian Reservation, and for Other Purposes,'' Act of March 1, 1933, ch. 160, 47 Stat. 1418 (1933), 5 Charles J.Kappler, *Indian Affairs: Laws and Treaties* 326–327 (1941), *as amended by* Pub.L.No. 90–306, 82 Stat. 121 (1968) (the ''1933 Act''), which added the Aneth Extension to the Navajo Reservation, including the lands located at Montezuma Creek where the plaintiffs' place of employment is located. " The Aneth Extension Act (47 Stat. 1418), after describing the Aneth Extension by metes and bounds, provides that those public lands "be, and the same are hereby, permanently withdrawn from all forms of entry or disposal for the benefit of the Navajo and such other Indians as the Secretary of the Interior may see fit to settle thereon". The NN exercised its power of exclusion in this NN case.

US Chapter 570 August 9, 1937. | [H. R. 6958.] 50 Stat., 564. Kappler's Indian Affairs pg. 523.

16. See the **72nd Congress 1st session Document 64 Senate Report.**

17. The U.S. Supreme Court found that Congress never intended to have a checkerboarded Utah/NN jurisdiction within this Aneth extension. [7]

18. The acts complained of by both the NN Plaintiffs and counterclaiming NN Defendants occurred at Montezuma Creek within the Aneth Extension. The surface rights of this Utah Trust Fund land were with the Navajo Nation, and some mineral rights with Utah beginning in 1933. The NN purchased those rights in 1933 with $20,000 of tribal funds. A finding by *MacArthur* 2002, is incorrect. Utah did not purchase these lands.

19. The Enrollment Act admitting Utah to the Union, upholding the Treaty of Guadalupe Hidalgo promises for Indian Nation independence from state control, provided:

"That the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof; and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States." 28 Stat. 108.

***b. NN Court jurisdiction***

20, The on March 1, 2000 explained its jurisdiction over the Defendants, as follows:

"The Court has jurisdiction over the defendants partly because they are the named parties who have committed acts within the NN territorial boundaries, and as well because the defendants became plaintiffs by filing their counterclaims. In accord with *Dodge v.Nakai,* 298 F.Supp. 17 (Ariz.dist.1968) and *Clark v. Barnard,* 108 U.S. [436, 2 S.Ct. 878, 27 L.Ed. 780] (1883). This court has jurisdiction."
(March 1, 2000 NNDC Order at 10.)

[7] **MacArthur 2005 at 960**

21. The Treaty-protected and Statute- protected NN Court likewise cited to Bureau of Indian Affairs (BIAd) adopted (1) NN common law, customs and traditions, mandate the NN Court protect the people [NN police powers]; (2) NN statutory law and 7 NNC 253(B); (3) NN Rules of Civil Procedure; (4) applicable U.S. law; (5) NN Bill of Rights; (6) 1968 ICRA. All provide for NN Court jurisdiction.

22. Where Nations enter into agreements, the reservation of sovereignty is read into the agreements as a postulate of the legal order. [[8]]

**c. *NN History Is the Antithesis of the Montana Doctrine***

23. NN jurisdiction draws upon sovereignty, unlike States, that is not derived from the Constitution, but existed for eons prior to the Nation's treaties of 1849 and 1868. It is a superior form of sovereignty. [[9]] 'The NN exercises its inherent sovereignty through independent and co-equal branches of a tripartite Navajo government, including an independent Navajo judiciary. "[[10]]

24. The NN common law has been declared its Constitution. Formally, it has no document called a Constitution but it did enact a Bill of Rights, prior to the ICRA.

25. "The law of tribal sovereignty exemplified by cases such as *Williams v. Lee*

---

[8] *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398 (1934) and *Veix v. Sixth Ward Building & Loan Association of Newark*, 310 U.S. 32 (1940). *See, Cuyahoga Metropolitan Housing Authority v. United States*, No. 01-46C (Fed.Cl. 09/22/2003) (" into all contracts, whether made between States and individuals, or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the pre-existing and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur.")

[9] **MacArthur 2002**

[10] **MacArthur 2005 at 963-965**

has afforded the NN "the breathing room to develop consumer protection, employment, and other statutory laws that relate to core aspects of practical sovereignty, such as provision of jobs and protection from unfair economic practices." [[11]]

26. The NN Courts involve about 220,000 citizens, with over a million visitors a year within their borders, process about 100,000 cases a year, involving both Indian and non Indians. It is not uncommon for non Indians to be plaintiffs in their Courts.

27. The NN Supreme Court holds
"Our jurisdiction statute, 7 NTC Sec. 253 … provides for civil jurisdiction over all areas where the prior Navajo Tribal Courts of Indian Offenses had jurisdiction and those provided for by a resolution of the Tribal Council. Today we hold that there is *full civil jurisdiction over any person doing injury within the Navajo Nation* because of the inherent sovereignty of the Navajo Nation and because of the residual jurisdiction of the prior courts." [[12]]

28. The BIA- NN Indian Self Determination Act Contracts for judicial program services mutually oblige the NN to apply its law equally in a uniform and fair manner to all 'persons' under the Indian Civil Rights Act (ICRA). (App. Pg. 122, 132).

29. ICRA likewise prevents state court jurisdiction in the NN (25 U.S.C.§ 1321-1326), and by incorporation in these government to government, sovereign to sovereign contracts, obliges no exceptions for immunities, land ownership types, or other exceptions. Any ambiguities in this regard are to be read for, not against the Navajo Nation. See contracts and funding agreements App. Pg.121-145 incorporated herein.

30. As a government to government, sovereign to sovereign, agreement, this contract is the Article VI supreme law of the land. Fn. 2 *supra.*

31. Based upon the foregoing, there is nothing showing any US restrictions on NN civil jurisdiction over non Indians, a sovereignty preserved by Navajo-Mexico Treaties that

---

[11] **Id. At 965**
[12] **Id at 968**

Mexico preserved in the Treaty of Guadalupe Hidalgo, and has remained unrestricted since.

32. Civil authority of Indian Nations was observed to be unrestricted prior to the U. S. Supreme Court's transposition with Treaty limited criminal authority, and that the civil jurisdiction was not even a judiciable question for Article III Courts to entertain. See, fn. 46, *infra*.

***e. NN Court Orders Designates Plaintiffs to Seek Federal Court Enforcement of the NN Actions in Behalf of All Protected by the NN Actions***

33. On March 15, 2000 the NN also issued a special order in satisfaction of the injunction, selecting these NN Court Plaintiffs seek enforcement of the orders in state or US courts, "under comity and applicable law. " NN March 2, 2000 order pg. 2. The *v. US*, 2007 and *Medellin*, supra, and *Miner Electric, infra*, rulings memorialize preexisting law that warrants full force and effect enforcement of all acts of a NN Court in its guardian's Courts.

*34.* On March 15, 2000, the NN Court joined all Defendant parties together in liability, permanently for the case in chief, under NNRCivP at 65. [ [13]]

*35.* The NN Court spelled out in detail how its jurisdiction was essential for protecting the Plaintiffs and the public's happiness, peace, prosperity, and welfare, all police powers of the NN.

***f. Bad Men Among the Whites are Navajo Nation***

*36.* On December 28, 1999 the Navajo Nation Shiprock District Court issued an injunction order in behalf of the NN Plaintiffs, making a final finding of liability against clearly identified NN Defendants San Juan County ("County"), San Juan Health Services

[13] **MacArthur 2005 at 926.**

District ("District"), ex County Commissioners and District Governance board members J. Tyron Lewis, Bill Redd, and Mark Maryboy (official capacity only), San Juan County Commission Administrator/District CEO Rick Bailey, County Attorney/District counselor Craig Halls, District trustees Patsy Shumway (official capacity only), John Lewis, Karen Adams, District administrators Reid Wood and Lauren Schafer. March 15, 2000, the NN District Court joined Truck/Farmer's Insurance/Zurich Financial Services, and Defendants Counsel Mr. R. Dennis Ickes, with all other Defendants. The Court identified how US and Utah public policy was being violated by them, as well as, the NN public policy, and all parties were joined in these violations.

***g. NN Due Process and Equal Treatment***

*37.* On December 12, 1999, the NNDistrict Court, within its inherent sovereign authority, issued the first of several orders in behalf of the NN Plaintiffs, and I.H.S. patients in the Aneth Extension Utah area of the Navajo Nation, and for NN Court protection (a) after 32+ hours of hearings, (2) after 14,000 pages of documents, (3) after admission of all the Navajo law-counterclaiming Defendants' evidence into the record, (4) after the Defendants' unanimous representation by Navajo Bar Counsel, (5) after the Defendants' litigation funded by taxpayers and Truck/Farmer's Insurance/ Zurich Financial Services, (6) after Defendants filed two 'answers'; (7) after Defendants filed and argued motions; (8) while no NN Court rulings in any way prohibited them from filing motions, using a certified Court reporter, or participation as they so wished; (9) and after NN Parties conducted examination and cross examination of live witnesses by their NN bar counsel.

*38.* NN Plaintiffs and the NN Court did not prevent exhaustion of NN Defendants with NN Court remedies. NN Defendants waived this relief. NN Defendants NOW claim the

injunction blocked them from exhausting their NN Court relief. NN Rules of Appellate Procedure provide for an IMMEDIATE NN Supreme Court jurisdictional analysis by way of filing a brief for mandamus or exceptional relief. During about 14 months of NN Court litigation, Defendants never sought such relief, and neither did they affirmatively seek relief from NN Court actions in US District Court, save Defendants Truck and Mr. Ickes. The US Courts, without Defendants requesting, essentially aided them under a doctrine that makes US Courts advocates for non Indians. About Dec. 19, 2003, the NN Defendants did not wish the NN Supreme Court to review the NN Court's jurisdiction over them, and even FOUGHT AGAINST the NN Plaintiffs motion in US District Court to remand the case to NN Court so as to allow the NN Defendants and Plaintiffs that opportunity. The motion was withdrawn after the Defendants ardently objected to it in US District Court. **MacArthur 2005** pg. 906.

*39.* During the time of the NN case, the BIA regularly oversaw NN Court proceedings for any violations of the NN-US Self Determination Act contract obliging ICRA's application to NN Court proceedings, under penalty of withdrawal of funding. App. Pg. 121-145.

*40.* No violations were identified for this case by the BIA, or for any other NN Courts where non Indians are parties, very often Plaintiffs. Id.

***41. The NN Court judge could not refuse the NN Defendants counterclaims by way of contract law, but more vitally, BIA-accepted and ratified and partly funded NN Bill of Rights and ICRA. App. Pg. 122.***

***h. NN Rule 65 Permanent Liability Findings***

42. ***Plaintiffs' harms***. The NN Court meticulously made factual findings as to how these NN whistleblowing Plaintiffs' injury claims were all well founded in NNlaws, Bill of Rights, common law of customs and traditions, with tortuous injuries and how they were mistreated and further tortiously injured by the NN Court processes abused by the NN defendants with their Truck/Farmer's Ins./Zurich Financial ("Truck") litigation and through Truck's hired counsel. The NN Court identified that the misrepresentation of fact to the Court that the Plaintiffs were 'bold faced liars' was relied upon to lift a TRO, thus further injuring the Plaintiffs and public and Court machinery itself.

43. ***NN Patient Harms***. The NNCourt also found the Plaintiffs' claims for and in behalf of the NN Aneth extension patients was well founded under NN customs and traditions.

44. The NN Court Defendants' permanently liable for damages to the area's Indian Health Service I.H.S. patients, especially clinically-dependant and insulin-dependant diabetics who stopped going to the local defendant-operated independent subcontractor I.H.S. clinics in Montezuma Creek and Monument Valley. The NNCourt found the defendants were turning I.H.S. from local clinic care, in an isolated wilderness 65-100+ miles from the next nearest I.H.S. hospital by the Defendants (a) demanding payment at time of service; (b) demanding they produce a Certified Degree of Indian Blood Certificate at time of service; and (c) privately billing these I.H.S patients, convincing them their Treaty-guaranteed health care was no longer available. Eventually the Defendants contracted with a private collection company, who summoned these poorest of the poor I.H.S. patients, often non English speaking, often without a phone or electrical communications, often without transportation, into *state* Court, outside the NN exterior borders, forcing them to pay bills, with threats of jail, and threats of taking their

cattle, sheep, or couch, or only vehicle, sole possessions, to obtain payment of medical bills, some of which had already been paid. As late as 2003, and estimated several hundred people were still not going to the clinics for care, due to these local government's actions.

45. The NN Defendants knew the harms to the Plaintiffs and people and Courts they were causing to a unique vulnerable group of aboriginal people, and continued their actions anyway. Their own monthly statistics showed a sharp drop in patient care. The NN Court placed them on judicial notice of a 250% drop in insulin dependent diabetics. The Defendants administrators, officials, and staff of physicians, physician assistants, and nurses were well aware of the medically and clinically dependent populations. The reason they sought to be an I.H.S. contractor was to support northern county tax payers with reservation population US guaranteed revenues from these same dependent populations. These Defendants knew and understood the area was a diabetic epidemic area with insulin and clinic dependent population. All Defendants knew and understood what dangers face this poor, uneducated, largely non English speaking people, 65-100 miles, over dirt and dangerous roads, from any other health care. They understood that if this population thought they now had to pay for their care and went no where else, or could not afford to go anywhere else, what would happen to them. ***Upon judicial notice of these dangers, they knowingly continued their billing processes that were driving patients away.*** Despite the NN Court's order, they did NOTHING to educate the population that they could be seen without payment. We now know the local population was even more vulnerable to requiring clinic care due to radiation and hazardous and toxic waste exposure *for decades* as reported by the L.A. times writer Judy Pasternak

reports[[14]], and Congressman Waxman's Oct. 23, 2007 House Committee Government Oversight and Reform hearing[[15]].

46. NN Court injuries: The NN Court found that its machinery had been interfered with (App. Pg. 109-110) by numerous rule violations; spoliation, sandbagging, and withholding evidence; hiding witnesses; intimidating witnesses.

## VIII. COUNT ONE: THE IMPLIED DIVESTITURE DOCTRINE VIOLATES THE EXPRESS AND IMPLIED TREATY-PROMISES AND FIDUCIARY GUARDIANSHIP DUTY OFPROTECTING SELF-DETERMINATION, RESIDUAL INHERENT SOVEREINGTY,AND PROMISES OF PEACE, HAPPINESS, PROSPERITY

47. Justice Souter observes Indian case law is split. See, *Nevada v. Hicks*, 533 U.S. 353, 376, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (Souter, Kennedy & Thomas, JJ.,

---

[14] http://www.latimes.com/news/nationworld/nation/la-na-navajo19nov19,0,1645689.story?page=8

[15] Hearing on the Health and Environmental Impacts of Uranium Contamination in the Navajo Nation http://oversight.house.gov/story.asp?ID=1560; http://www.radiationcontrol.utah.gov/Board/Agenda.pdf

> "Over the years, open pit mines filled with rain, and Navajos used the resulting pools for drinking water and to water their herds. Mill tailings and chunks of uranium ore were used to build foundations, floors, and walls for some Navajo homes. Families lived in these radioactive structures for decades. Radioactive dust from abandoned mines and waste piles blew in the air and was inhaled by those who lived nearby. Navajo children played in the mines and the piles of radioactive debris. They drank contaminated water that came straight from the mines. ....
>
> Navajo kids were swimming in open pit uranium mines in the 1990s. When the U.S. EPA took readings at one mine site, the radium levels were over 270 times the EPA standard. That was last year. And American citizens are still drinking contaminated water, breathing in radioactive dust, and likely living in radioactive homes — today. That's happening today. Right now. .....If a fraction of the deadly contamination the Navajos live with every day had been in Beverly Hills or any wealthy community, it would have been cleaned up immediately. But a different standard applied to Navajo lands. Half-measures or outright neglect has been the official response. It's hard to review this record and not feel ashamed. What's happened just isn't right."

Id.

concurring). Justice Thomas concurring in *United States v. Lara,* 541 U.S. 193, 200–201,124 S.Ct. 1628, 158 L.Ed.2d 420 (2004), observes Indian law is 'schizophrenic'.

48. Most notably, the U.S. District Court of Judge Bruce S. Jenkins ("**MacArthur 2005**" or "Jenkins Court") would *not* have applied the 'implied divestiture' doctrine found in *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) ("Montana") and its progeny [[16]] to deny NN Court authority over these NN Court Defendants, save the Tenth Circuit Court ordered his Court to apply this doctrine. [ [17]]

49. The "*Montana*" 'implied divestiture' doctrine was applied to these NN Plaintiffs, in spite of, contrary to, the Jenkins' Court's exhaustive examination of all other law under a *Nat'l Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. at 851, 105 S.Ct. 2447, 85 L.Ed.2d 818 analysis, as also ordered by the Tenth Circuit Court. See, **MacArthur 2002.**

50. The Jenkins Court meticulously, over a 2.5 year time period, identified how *the entire body of American Indian law* consisting of the United States (A) Congress and (B) Executive and (C) pre 1981 Supreme Court case law, *consistently*, and *without exception* (i) recognizes the NNCourts are the *exclusive* Courts for resolving civil disputes within the NN(save the Price-Anderson Act and other very specific exceptions), for Indian and non Indian alike, *equally*; (ii) recognizes the NN self determination and inherent sovereignty; and (iii) NN Court civil authority is regardless of the type of land ownership or right-a-way or race, ethnic, or political affiliations of the parties. *Montana* and its progeny are to the contrary.

---

[16] *Atkinson Trading Post v. Shirley*, 532 U.S. 645, 653 (2001); *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997); and *Nevada v. Hicks*, 533 U.S. 353 (2001)

[17] MacArthur et al v. San Juan County et al, U. S. District Court, Utah, Central Division, case no. 2:00cv0584, 391 F.Supp.2d 895, fn. 35 and fn. 105 (D.Utah 2005) (**"MacArthur 2005"**)

**51.** The Jenkins Court relied on *Williams v.Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) and its progeny, and all other legal sources and the unique NN history to find the U. S. Supreme Court probably erred in *Atkinson, supra.* Id. Fn. 3. See, *Williams v. Lee*, [[18]]; *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164 (1973) [[19]] ; *Warren Trading Post Co. v. Arizona Tax Comm'n,* 380 U.S. 685, 690 (1965) [[20]] .

51a. Treaties are Contracts. The BIA-NNIndian Self Determination Act judicial program agreements are contracts. All are drafted by the US. Any restrictions upon NN civil court authority must be specifically expressed under contract law. Any ambiguities are construed against the drafter. NNunrestricted sovereign civil authority over all 'persons' or 'people' Indian and non Indian alike is the express or implied promise of these Treaties. Id. Fn. 14-17 , *supra.*

## IX. COUNT TWO: VIOLATIONS OF NETWORK OF LAW ARE VIOLATIONS OF US FIDUCIARY DUTY TO INDIVUAL INDIANS AND THE NAVAJO NATION

52. Plaintiffs assert this Court is bound to recognize their rights, under the wording of the Treaties and Agreements, that so easily could have been written differently if Congress

---

[18] *Williams v. Lee*, 358 U.S. at 220-221 (footnote omitted).("Congress has . . . acted consistently upon the assumption that the States have no power to regulate the affairs of Indians on a reservation. . . . Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction….." )

[19] *McClanahan (*cited in *Montana* at *564)* ( (1) ambiguities in Treaties and Statutes to be read in support of the Navajo (at 174-176); (2) Court is to look to Treaties and relevant statutes limiting State government (at 172); (3) Arizona [like Utah] has an Enabling Act and Constitution disavowing any authority over Indians (at 175); (4) Congress has provided a means whereby States can have authority over Indians (at 177-178); (5) "To be sure, when Congress has legislated on Indian matters, it has, most often, dealt with the tribes as collective entities. But those entities are, after all, composed of individual Indians, and the legislation confers individual rights." (at 180) (7) checkerboarded land is within the exterior boundaries of the Navajo Nation authority at 175). (emphasis added)

[20] *Warren Trading Post* ("Congress has, since the creation of the Navajo Reservation nearly a century ago, left the Indians on it largely free to run the reservation and its affairs without state control, a policy which has automatically relieved Arizona of all burdens for carrying on those same responsibilities.")

and the Executive intended to say the NN and persons injured within the NN will have no courts into which they can seek legal relief if the defendant is a non Indian or political subdivision.

53. To determine whether plaintiff's contractual rights were breached, the court first defines what those rights are. *See San Carlos Irrigation and Drainage District v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). First, as an overarching matter, the court, in interpreting a contract seeks to "effectuate its spirit and purpose." *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir.1991) (quoting *Arizona v. United States,* 575 F.2d 855, 863 (Ct. Cl. 1978)). The purpose is the happiness, peace, and prosperity, health, and safety of all the Plaintiffs and all people injured by Indian and non Indian alike. Toward that end, Treaty and BIA agreement interpretation "begins with the plain meaning of the agreement." Id. at 1274; see also *Northrop Grumman Corp. v. Goldin*, 136 F.3d 1479, 1483 (Fed. Cir. 1998); *Barseback Kraft AB v. United States*, 121 F.3d 1475, 1479 (Fed. Cir. 1997). "[A]n interpretation which gives a reasonable meaning to all parts," the law provides, "will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." *Arizona,* 575 F.2d at 863; see also *Fortec Constr. v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985); *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 458-59 (2001).

54. Plaintiffs assert it is reasonable to construe all the law below as meaning that the BIA has ratified NN Court authority over all persons, Indian and non Indian alike, consistent with *Santa Clara Pueblo v. Martinez* 436 U.S. 49, 55, 67-68, (1978), and

*Dodge, infra*, regardless of land types under 18 USC §1151. *See, McClanahan, Williams, Warren, infra.*

55. Plaintiffs also assert that if NN court actions of all types, are not fully enforceable in Article III Courts, people within the NN are targets for non Indians seeking to civilly harm them, as there are no other courts available for redress of NN legal injuries occurring within the NN.

56. NN sovereign power remains intact unless Congress expressly limits it. "Sovereign power," the Supreme Court has stated, "governs all contracts subject to the sovereign jurisdiction, and will remain intact unless surrendered in unmistakable terms." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982)); see also *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1578 (Fed. Cir. 1997), cert. denied, 524 U.S. 951 (1998).

52. Further, if Congress passes legislation that repeals money compensation promises under contracts, the US breaches the Contract. *Lynch v. United States,* 292 U.S. 571, 579 (1934).

57. As to municpalities having authority over US contracts, which Treaties are, the Supreme Court stated in *Detroit v. Detroit Citizens' Street Ry. Co.*, 184 U.S. 368, 382 (1902) ("[t]he contract once having been made, the power of the city over the subject, so far as altering the rates of fare or other matters properly involved in and being a part of the contract, is suspended for the period of the running of the contract"). The NN Court found the Defendants were injuring people due to violations of their independent contractor I.H.S. contract and Treaty guarantees.

58. Justice Brandeis in *Lynch*, held that while US contracts may be abrogated when "the action taken falls within the US police power or some other paramount power," id., there

was no suggestion that Congress had "abrogate[d] these contracts in the exercise of [such] power."*Lynch*, at 580. Congress and the Executive have done nothing to restrict NN authority over Indians and non Indians alike. The Jenkins Court holds,

"Since the Indian Civil Rights Act of 1968, Congress has enacted no legislation limiting, restricting or diminishing Indian tribal jurisdiction, tribal sovereignty or autonomy." **MacArthur 2005** at 945.

***a. Article II Treaties, Executive memorandum and orders, Government to Government agreement, NNboundary extension Statute; UN Treaties supported by statutes***

59. The U.S. Article III Court's refusal to enforce the NN Court orders, by full force and effect under US Constitution Article VI, or full faith and credit under Article IV, and US supremacy doctrines, violates the contractual Treaty-protected NN inherent sovereignty, and undermines US Article I and II branches of government attempts to uphold NN Court independence and Congressionally- and Executive- unrestricted sovereignty and self-determination as follows:

**(A)** U. S. –Mexico Treaty of Guadalupe Hidalgo Article XI

> "And, finally, the *sacredness of this obligation shall never be lost sight of by the said Government*, when providing for the removal of the Indians from any portion of the said territories, or for its being settled by citizens of the United States; but, on the contrary, *special care shall then be taken not to place its Indian occupants under the necessity of seeking new homes, by committing those invasions which the United States have solemnly obliged themselves to restrain"*

**(B)** United States -Navajo Nation Treaty of 1849 [[21]] promises to the 'tribe' and to 'Navajoes' individually;

Article I.

[21] (September 9, 1849, 9 Stat. 974,Ratified September 9, 1850. Proclaimed Sept. 24, 1850)

" The said Indians do hereby acknowledge that, by virtue of a treaty .....of Guadalupe Hidalgo, ....the said tribe was lawfully placed under the *exclusive* jurisdiction and *protection* of ...the said United States, and that they are now, and *will forever remain*, under the aforesaid jurisdiction and protection."

Article II

"That from and after the signing of this treaty, hostilities between the contracting parties *shall cease*, and *perpetual peace and friendship shall exist;* the said tribe hereby solemnly covenanting ...they will remain at peace, and treat honestly and humanely all persons and powers at peace with the said States; and all cases of aggression against said Navajoes by citizens or others of the United States, ... shall be referred to the Government of said States for adjustment and settlement."

Article III

"The Government of the said States having ***the sole and exlusive right of regulating the trade and intercourse with the said Navajoes***, it is agreed that the laws now in force regulating the trade and intercourse, and for the preservation of peace with the various tribes of Indians ***under the protection and guardianship of the aforesaid Government***, shall have the same force and efficiency, and shall be as binding and as obligatory upon the said Navajoes [not 'tribe'], and executed in the same manner, as if said laws had been passed for *their sole benefit and protection.."*

Article VI

"Should any citizen of the United States, or other person or persons subject to the laws of the United States, murder, rob, or otherwise maltreat any Navajo Indian or Indians, he or they shall be arrested and tried, and, *upon conviction,* shall be subjected to all the penalties provided by law for the protection of the persons and property of the people of the said States."

Article VI

Relying confidently upon the justice and the liberality of the aforesaid Government, and anxious to remove every possible cause that might disturb their peace and quiet, it is agreed by the aforesaid Navajoes that the Government of the United States shall, at its earliest convenience, designate, settle, and adjust their territorial boundaries,and *pass and execute in their territory such laws as may be deemed conducive to the prosperity and happiness of said Indians [not 'tribe']*

Article X

*For and in consideration of the faithful performance of all the stipulations herein contained by the said Navajo Indians*, the Government of the United States will grant to said Indians such donations, presents, and implements, and ***adopt such other liberal and humane measures, as said Government may deem meet and proper.***

**(C)**United States -Navajo Nation Treaty 1868 [[22]]

Article I

"*If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians,* the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and *also to reimburse the injured persons for the loss sustained.*"

*If the bad men among the Indians shall commit a wrong or depredation* upon the person or property of any *one, white, black, or Indian*, subject to the authority of the United States and at peace therewith, the Navajo tribe agree that they will, on proof made to their agent, and on notice by him, deliver up the wrongdoer to the United States, to be tried and punished according to its laws'

Article 10

No future treaty for the cession of any portion or part of the reservation herein described, which may be held in common, *shall be of any validity or force against said Indians unless agreed to and executed by at least three-fourths of all the adult male Indians occupying or interested in the same*; and no cession by the tribe shall be understood or construed in such manner as to deprive, without his consent, any individual member of the tribe of his rights to any tract of land selected by him provided in article 5 of this treaty.

Article 13

"... the territorial reservations set apart for the *exclusive use and occupation* of the Indians...."

All the foregoing provisions of these Treaties are violated when Article III US Courts refuse to uphold the Executive and Congressional laws supporting NN jurisdiction over non Indians; and interpret the Treaties and statutes there under, Article VI supreme law

[22] (June 1, 1868 15 Stat. L. 667. Ratified July 25, 1868. Proclaimed Aug. 12, 1868)

of the land, contrary to the NN and the drafters that could have prohibited NN civil authority over non Indians, in clear and express terms, and did not.

**(D)** U.S.-NAVAJO BIA INDIAN SELF DETERMINATION ACT CONTRACT. Attached and incorporated herein, App. Pg. 121-145, demands Navajo law and the ICRA as the law the NN is to provide judicial services to apply, protect and uphold within NN borders without exclusion for land ownership or type (App. Pg. 122).

***b. Executive Branch Upholds NN Court Authority over Non Indians By Not Expressly Denying it, and by Executing Laws Supporting It***

**(E)** Executive Orders and Memorandum [[23]] that totally approve, accept and ratify NN statutory expressions of their sovereignty within the exterior borders of

---

[23] MacArthur et al v. San Juan County et al, U. S. District Court, Utah, Central Division, case no. 2:00cv0584, 391 F.Supp.2d 895, fn. 75 pg. 943 (D.Utah 2005) (**"MacArthur 2005"**) (*"Government–to–Government Relations with Native American Tribal Governments: Memorandum for the Heads of Executive Departments and Agencies,* 59 Fed.Reg. 22951 (1994); 19 Weekly Comp. of Pres. Doc. 98 (1983) (*President Reagan* reaffirming the rejection of termination as a policy and announcing the goal of decreasing tribal dependence on the US Government);
**Id at 943 fn. 75** ("United States Transmitting Recommendations for Indian Policy, dated July 8,1970, H.R. Doc. No. 91–363, 91st Cong., 2d Sess. (1970), *President Richard M. Nixon*");
**Id at 945** (*See, e.g.,* Department of Justice Policy on Indian Sovereignty and Government–to–Government Relations, 61 Fed.Reg. 29424 (June 10, 1996), *current version available at http://www.usdoj.gov/otj/sovtrb.htm;* Memorandum for the Heads of Executive Departments and Agencies: Government–to–Government Relationship with Tribal Governments, dated September 23, 2004,*available at http://www.whitehouse.gov/news/releases/2004/09/20040923–4.html* (The *Bush Administration* "is committed to continuing to work with federally recognized tribal governments on a government- to-government basis and strongly supports and respects tribal sovereignty and self-determination for tribal governments in the United States."). As one recent commentary suggests,"There is reason to believe that the policy of Indian self-determination is more deeply entrenched than past congressional policies. In over fifty years, Congress's power over Indian affairs has been exercised almost exclusively to further tribal sovereignty and economic self-sufficiency." David H. Getches, Charles F. Wilkinson & Robert A. Williams, Jr., *Cases and Materials on Federal Indian Law* 225 (5th ed.2005). The direct participation and input of Native Americans in shaping and implementing the policy supporting Indian self-determination through tribal self-

what is known as the NN that extends its protections of the law to all persons, Indian and non Indian alike.

**(F)** 1933 Aneth Extension Act [[24]];

**(G)** a sovereign – to- sovereign, government-to-government [[25]] Executive Agreement contract as found in U.S.-NNIndian Self Determination Act ("ISDA") (25 U.S.C. §§450a-n) contracts and funding agreements for the NNto provide judicial services applying NNlaw equally and uniformly by agreement and under the ICRA Appendix Exhibits incorporated herein;

**(H)** NN inherent sovereign law including court statutes originally approved by the Secretary of the Interior, with that approval binding the United States to upholding this law. *See, Navajo Tribe v. Udall*, 306 F. 2d 819 (C.A.D.C. 1962), cert. den. 372 U.S. 908.;

**(I)** Other International Treaties confirming U.S. agreed promotion of Indian Nation self-determination. U.N. International Covenant on Civil and Political Rights (UNICPCR) 2200A(xxi) OF 16 Dec. 1966 entry into force **23 March**

---

government may have a great deal to do with the self-determination policy's stability and endurance. *See generally* Charles Wilkinson, *Blood Struggle: The Rise of Modern Indian Nations* (2005); Vine Deloria, Jr. & Clifford Lytle, *The Nations Within: The Past and Future of American Indian Sovereignty* (1984); *Indian Self Rule* (Kenneth R. Philp, ed.1986); 1 American Indian Policy Review Comm'n, *Final Report* at 69–82.")

[24] "An Act to ***Permanently Set Aside*** Certain Lands in Utah as an ***Addition to the Navajo Indian Reservation***, and for Other Purposes," Act of March 1, 1933, ch. 160, 47 Stat. 1418 (1933), 5 Charles J. Kappler, *Indian Affairs: Laws and Treaties* 326–327 (1941), *as amended by* Pub.L. No. 90–306, 82 Stat. 121 (1968) (the "1933 Act"), which added the Aneth Extension to the Navajo Reservation, including the lands located at Montezuma Creek where the plaintiffs' place of employment is located.

[25] Executive Order 13084 of May 14, 1998 [Federal Register: May 19, 1998 (Volume 63, Number 96)]; Executive Order Executive Order 13175 November 6, 2000 (The Federal Government has enacted numerous statutes and promulgated numerous regulations that establish and ***define a trust relationship with Indian tribes***.)

**1976**, in accord with article 49. [26] The Courts [within the United States] shall apply the laws to 'everybody' equally. Part III, Art. 14 Sec. 1. *Supported by the statutes of* ***1975*** *Indian Self Determination Act* *Pub. L. 93–638, § 2, Jan. 4, 1975, 88 Stat. 2203.) codified as 25 U.S.C. 450 et seq; the 1968 ICRA (25 U.S.C. 1302(8) and 1301(2); 1321-1326)and Utah Enabling Act and Constitution Art. III 'ordinance' disclaimer provisions.*

***c. Article I Congressional Statutes Mandating NN Equal Protection of Laws for All Persons Within the NN, excluding all other Law and Courts***

60. The following statutes are a network of law, in keeping with the NN Treaties that demand full force and effect enforcement of NN orders, decrees and judgments under the U.S. Constitution's Article VI, as the supreme law of the land, and under US supremacy doctrines in the Article I Indian Commerce clause and the Treaties express wording:

**(J)** The ICRA of 1968, Pub.L. No. 90–284, 82 Stat. 77 (1968), 25 U.S.C.A. §§ 1301–1326 (2001) ("ICRA") [27];

**(K)** 25 U.S.C. §§450a-n(Indian Self Determination Act contracts) [28];

**(L)** Tribal Self–Governance Act of 1994, Pub.L. 103–413, title II, 108 Stat. 427 (1994) (*codified at* 25 U.S.C. §§ 458aa–458hh (2000))[29];

---

26 The U.S. has committed to the UN to "promote the realization of the right of self-determination and shall respect that right, in conformity with the provisions of the Charter ...." for 'persons' living on trust lands. UNICPCR Part 1 Art. 1, sec. 3.

27 **MacArthur** 2005 at 988-999.

28 MacArthur et al v. San Juan County et al, U. S. District Court, Utah, Central Division, case no. 2:00cv0584, 391 F.Supp.2d 895, fn. 75 pg. 943 (D.Utah 2005) (**"MacArthur 2005"**)

29 Id. At fn. 67 and 69, at pg. 941

**(M)** Indian Tribal Regulatory Reform and Business Development Act of 2000; Pub.L. No. 01–511, Title VIII, § 8077(b), (c), 104 Stat. 1892 (1990), *codified at* 25 U.S.C.A. §§4301 et seq. and note (2001)[[30]];

**(N)** Indian Tribal Justice Act of 1993, Pub.L. No. 103–176, 107 Stat. 200, *codified at* 25 U.S.C.A. §§3601 *et. seq.* (2001)[[31]];

**(O)** Indian Tribal Justice Technical and Legal Assistance Act of 2000, Pub.L. No. 106–559, 114 Stat. 2778,*codified at* 25 U.S.C.A. §§ 3651 *et seq.* (2001)[[32]];

**(P)** 25 U.S.C. §3631 (Tribal sovereignty not impaired or diminished);

**(Q)** 25 U.S.C. §111 [ [33]] ( NN District Court appointed Plaintiffs to go to US court for relief for themselves and the people within the Aneth Extension);

**(R)** 8 U.S.C. §1401(b) ( individual NN members are U.S. citizens)

**(S)** 18 USC §1151

## X. COUNT THREE: LACK OF GOOD FAITH AND FAIR DEALING AND FIDUCIARY DUTY

61. Commensurate with CFCRCP at Rule 9, the actions denying enforcement of these NN Court orders, and thus the denial of the US Treaty-, Agreement-, Statutory-,

---

[30] Id. At fn. 70 and pg. 942

[31] Id. At pg. 944 and fn. 76 "2601 [sic]" should read 3601.; 945 at fn. 77

[32] Id.

[33] 25 U.S.C. §111 (" **Second.** In cases where the *imperious interest of the tribe* **or** the ***individuals intended to be benefited,*** or <u>any</u> *treaty stipulation*, requires the intervention of an agency, then to such person as the tribe [here the Navajo Nation Court] shall appoint to receive such moneys or goods; or if several persons be appointed, then upon ***the joint order*** or receipt of such persons. ...**Third.** To the heads of the families and ***to the individuals entitled to participate*** in the moneys or goods. ....**Fourth.** By consent of the tribe, such moneys or goods may be applied directly, ***under such regulations, <u>not inconsistent with treaty stipulations,</u>*** as ***<u>may be prescribed by the Secretary of the Interior,</u>*** to such purposes ***as will best promote the happiness and prosperity of the members of the tribe, and will encourage able-bodied Indians in the habits of industry and peace. ") emphasis added***

fiduciary- protected entitlements of due process, equal protection, and all other remedies under NN law, arc set out as follows:

62. The *Montana* Implied divestiture Doctrine Reads as follows:

*"Though* Oliphant *only determined inherent tribal authority in criminal matters, the principles on which it relied support the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe. To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.* Williams v. Lee, supra, *at 358 U. S. 223;* 194 U. S. 152-154. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. *See Fisher v. District Court,* 424 U. S. 382, 424 U. S. 386; *Williams v. Lee, supra* at 358 U. S. 220; *Montana Catholic Missions v. Missoula County,* 200 U. S. 118, 200 U. S. 128-129; *Thomas v. Gay,* 169 U. S. 264, 169 U. S. 273. [Footnote 15]"

*Montana v. United States*, 450 U.S. 544, 565 (1981)

*The Montana Court exempted the Choctaw and Cherokee Nations in fn. 5.*

63. Each *MacArthur* Court identified above, applied the judicial doctrine of *Montana* and its progeny, ultimately, to the exclusion of all other Indian law to the contrary to eliminate the Defendants NN Court finally found liability under NNRCP at 65, because defendants were non Indian. *Santa Clara*, and *Dodge v.Nakai*, 298 F. Supp. 17 (Ariz. dist. 1968). Congress never gave the Supreme Court authority to limit Indian Nation Court authority or NN Court authority under contract. Id.

50. Though human lives, public safety, livelihoods, personal injuries and Treaties were involved, and ability of Indian Nations to carry out their police powers, the US Supreme Court refused to even accept and hear the Plaintiffs' petitions to enforce BIA approved

Navajo law, and the NN Court BIA contracted authority as the only US ly recognized Court within the NN.

64. The 2001 District Court and 2002 Tenth Circuit Court made factual findings that essentially eliminate the need for any insurer of a non Indian within Indian Country have to worry about paying off on a policy. Contrary to the District Court 2001 factual findings, the Clinic was insured and the employees, including these Plaintiffs, covered by that policy. Truck had contracts with Indians, and protected Indian defendants in litigation. No statutes give US Courts fact finding capabilities for Indian Nation cases. *Santa Clara, infra.* Notably, the NNCourt fully understood San Juan County controlled the daily operations of the San Juan Health Services District, and they were one and the same. Despite the trial record being placed into the US Court 2:00cv0584 record, colloquy of opposing counsel was relied upon for finding the County was not involved with the District. The NN Court and Plaintiffs understood every time the word 'district' was used, 'county' was one with the 'district'. All were joined as parties. Appendix pg 118-119.

65. The 2002 Tenth Circuit court refused to find state immunity for the Defendants, however, the 2005 MacArthur court applied qualified immunity for 42 U.S.C. §1983 to cloak the Indian defendants residing within the NN. Qualified immunity is unmoored from any statute. 42 U.S.C. §1983 was not created to limit NNCourt authority, or displace the NN Bill of Rights or the ICRA guarantees in 25 U.S.C. 1302(8).

66. The 2007 MacArthur Court applied state immunity to NN defendants who counterclaimed in NN Court, fully litigated their NN common law tort claims, and jointly and severally violated US , state, and NN public policy and law, for which there are no

immunities under the US promise to enact legislation in the Indians best interests. The 2002 MacArthur ruling refused to apply state immunity. Without a required *en banc* hearing, the 2007 *MacArthur* 10th Circuit ruling applied state immunity without identifying any state public policy that warrants NN defendants actions, and without citing to any authority for the Utah legislature to pass laws within the NN, given 25 U.S.C. §§1321-1326, requiring events to occur within the NN before Utah can take control, and Utah's Enabling Act and Constitution 'ordinance' disclaimer parts. *Williams, McClanahan, supra.*

67. The 'implied divestiture' theory as in *Montana* and its progeny, is unmoored [[34]] from and violating Article I statutory language and intent, Article II Executive acts [[35]], and Article III limitations requiring Congress to give US Courts ancillary or supplemental jurisdiction over Indian Nations. *Santa Clara, Dodge, infra.*

68. The *Montana* Doctrine, *as applied to these Plaintiffs civil claims*, by the US Courts identified in Par. 8, harms the Plaintiffs and NNpublic, and NN Courts. The *Montana* doctrine;

(a) *violates* the intent of the signers of the US NN treaties who would never have agreed to US Courts eventually destroying the due process and equal protection, happiness, peace, prosperity of the people in the ONLY US ly recognized courts of the area, and further civilly immunizing and advocating for, the 'bad men among the whites' from any harms to the people, and without payment for those harms;

(b) *violates* the individualized US- Indian Nation Treaties that consider the unique needs, history, and customs and traditions of the Navajo Nation, and its people and cultural

---

[34] MacArthur 2005 at 989 fn. 139
[35] MacArthur 2005 at 940-943

norms, separate and apart from, *Crow Nation* history, *allotment act* history (now repealed 28 U.S.C. 331-333 (2000)), *Montana* state history, is now to *all* Indian Courts, and to these Plaintiffs and the NNCourts; [[36]]

(c) *violates* the intent of Congressional statutes that recognize, adopt, ratify Navajo law as the only law to be applied within the Navajo Nation, Par. 16 *supra*;

(d) *violates* the intent of Executive Orders and Memorandum of Presidents Nixon, Reagan, Bush, and Clinton[[37]] that have regulations and government to government

---

[36] MacArthur 2005 at 960 fn. 105 (*Atkinson* Court erred).

[37] **MacArthur 2005 At 943** ("*Government–to- Government Relations with Native American Tribal Governments:Memorandum for the Heads of Executive Departments and Agencies,* 59 Fed.Reg. 22951 (1994); 19 Weekly Comp. of Pres. Doc. 98 (1983) (*President Reagan* reaffirming the rejection of termination as a policy and announcing the goal of decreasing tribal dependence on the Federal Government");
**Id at 943 fn. 75** ("United States Transmitting Recommendations for Indian Policy, dated July 8,1970, H.R. Doc. No. 91–363, 91st Cong., 2d Sess. (1970), *President Richard M. Nixon*");
**Id at 945** (*See, e.g.,* Department of Justice Policy on Indian Sovereignty and Government–to–Government Relations, 61 Fed.Reg. 29424 (June 10, 1996), *current version available at http://www.usdoj.gov/otj/sovtrb.htm;* Memorandum for the Heads of Executive Departments and Agencies: Government–to–Government Relationship with Tribal Governments, dated September 23, 2004,*available at http://www.whitehouse.gov/news/releases/2004/09/20040923–4.html* (The *Bush Administration* "is committed to continuing to work with federally recognized tribal governments on a government- to-government basis and strongly supports and respects tribal sovereignty and self-determination for tribal governments in the United States."). As one recent commentary suggests,"There is reason to believe that the policy of Indian self-determination is more deeply entrenched than past congressional policies. In over fifty years, Congress's power over Indian affairs has been exercised almost exclusively to further tribal sovereignty and economic self-sufficiency." David H. Getches, Charles F. Wilkinson & Robert A. Williams, Jr., *Cases and Materials on Federal Indian Law* 225 (5th ed.2005). The direct participation and input of Native Americans in shaping and implementing the policy supporting Indian self-determination through tribal self-government may have a great deal to do with the self-determination policy's stability and endurance. *See generally* Charles Wilkinson, *Blood Struggle: The Rise of Modern Indian Nations* (2005); Vine Deloria, Jr. & Clifford Lytle, *The Nations Within: The Past and Future of American Indian Sovereignty* (1984); *Indian Self Rule* (Kenneth R. Philp, ed.1986); 1 American Indian Policy Review Comm'n, *Final Report* at 69–82.")

agreements supporting NN self determination, lack of interference by state or political subdivisions, and supporting NN police powers;

(e) *violates* and eliminates altogether, the Congressional and Executive-recognized power of the Navajo Nations' Court's ability to define Treaty terms of 'peace', 'prosperity', 'happiness', or determine what measures best redress injuries under NNnorms of restorative justice, and unique interpretations of their own Indian Nation's cultural and societal norms and NN legal protections as to human and civil legal rights protections for all people, Indian and non Indian alike, Id. ;

(f) *violates* the Congressionally- insisted upon Utah Enabling Act and Constitutional 'Ordinance' disclaimer provisions consistent with the Treaty of Guadalupe Hidalgo [[38]] eliminating all state authority of any kind in the area;

(g) *violates* the Congressional intent of the Aneth Extension [[39] ] of the NNto ***expand*** NN territory and PERMANENT civil authority over lands occupied for hundreds of years by Navajo and other aboriginal people, including surface rights over state trust lands;

(h) *violates* the Executive's BIA's execution of Congressional statues supporting NN inherent sovereign self determination Court application of Navajo due process and equal protection standards, that exceed the U. S. Constitution's [[40]];

---

[38] MacArthur 2005 at 956 fn. 95.

[39] MacArthur 2005 at 959-960 (''An Act to Permanently Set Aside Certain Lands in Utah as an Addition to the Navajo Indian Reservation, and for Other Purposes,'' Act of March 1, 1933, ch. 160, 47 Stat. 1418 (1933), 5 Charles J. Kappler, *Indian Affairs: Laws and Treaties* 326–327 (1941), *as amended by* Pub.L. No. 90–306, 82 Stat. 121 (1968) (the ''1933Act''..... "The 1933 Act did not create a jurisdictional ''checkerboard'' of Reservation land and non-tribal land holdings; it delineated a continuous Reservation boundary, bringing the lands thus encompassed ''within the exclusive sovereignty of the Navajos under general federal supervision,''*McClanahan,* 411 U.S. at 175, 93 S.Ct. 1257, and within ''Indian country''under 18 U.S.C.A. § 1151(a).")

[40] MacArthur 2005 at 1031.

(i) *violates* the promises of the US to the NNmembers (all people) in exchange for the Navajo Nation's compliance with their Treaty and Agreement obligations [[41]] under the ICRA mandates;

(j) *supplants* Congressionally recognized NN inherent sovereignty, with prohibited common law [[42]] that is not supposed to exist [[43]];

(k) *violates and extinguishes* the inherent sovereign authority of the Navajo Court finding of final liability against these NNCourt defendants under the BIA-adopted, ratified NNRCivP at Rule 65 [[44]];

(l) *violates* and reverses 200 years of Article III Courts construing Treaty provisions, contract agreements, and statutes favorably for the Indians, as a fiduciary---- to now US courts becoming a fiduciary to *all those* "person or persons subject to the laws of the United States, who .... or otherwise maltreat any Navajo Indian or Indians..." , [[45]] leaving Plaintiffs, who had their US ly contracted-for due process, without redress, ANYWHERE, save now for compensation by the U.S. .... "to reimburse the injured persons for the loss sustained." Treaty of 1868 Art. 1;

---

[41] MacArthur 2005 at 955

[42] *Erie R. Co.* v. *Tompkins*, 304 U.S. 64, 78 (1938); *Santa Clara infra*; **MacArthur 2005** at 954 fn. 93 ( citing "If this power is to be taken away from them, it is for Congress to do it." *Williams v. Lee*, 358 U.S. at 223, 79 S.Ct. 269 (citing *Lone Wolf v. Hitchcock*, 187 U.S. 553, 564–566, 23 S.Ct. 216, 47 L.Ed. 299 (1903)). *Ex Parte Crow Dog*, 109 U.S. 556, 557, 572 (1883); *Lone Wolf v. Hitchcock*, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903) and *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 67-68, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). (This argument was raised and preserved by reference to *Lone Wolf* in the most recent objection to the U.S. District Court's permanent injunction of July 2, 2008. )

[43] MacArthur 2005 at 972 fn. 122.

[44] MacArthur 2005 at 926

[45] See, *Navajo Nation v. United States*, (No. 2006-5059 (Fed. Cir. 09/13/2007) *Kinney v. Clark*, 1844 U.S. LEXIS 322,*;43 U.S. 76; *Anthony v. United States*, 987 F.2d 670 (10th Cir. 1992) (U.S. must deal honorably with those with whom it contracts, and contracts are construed against the drafter.)

**(m)** *exemplifies* how every single legal nightmare associated with US Courts reviewing Tribal Courts, that *de facto* extinguishes Indian Nation laws, is found here-- as predicted--- in *Santa Clara Pueblo v. Martinez* 436 U.S. 49, 55, 67-68, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) prohibiting displacing Navajo law and Navajo Court authority with US law. The *MacArthur* Courts (i) supplemented, displaced, or misinterpreted Tribal Court factual findings based upon colloquy of counsel or evidence withheld from NN scrutiny in light of all other evidence, (ii) disallowed the doctrine of joint and several liability, (iii) resulted in years of interminable litigation in US Courts not speaking the Indians language or familiar with Navajo common law customs or Navajo Court procedures, hundreds of miles away from the local area,[[46] ](iv) promoted exhaustion of Plaintiffs into submission with the government- and insurance-funded wealthy defendants, and now with, (v) applied immunity unheard of in U. S. history for NN Defendants violating US contracts for which there is no immunity, violating NN law for which there is no immunity, and violating Utah law while acting in a proprietary fashion, for which there is no immunity, (vi) contrary to the treaty signers' intent;

**(n)** allows US courts to displace the NN definitions of 'peace' 'prosperity' 'happiness' , with an implied divestiture doctrine giving no relief anywhere unheard of in 1849 or 1868 or for 100 years after. **MacArthur 2005** at 956 fn. 90.

(o) has *de facto* obliterated the Congress and Executive ratified civil authority of NN Courts, without compensation for taking those authorities, and without the NN agreeing to the taking, participating in the US court proceedings;

[46] **MacArthur 2005** at 934

(q) gives *de facto* the lowest level minor political subdivision's employee, more 'state sovereignty' for nonexistent and state policy *violations*, than all NN sovereignty. [[47]];

(r) Eliminates 200 years of pre 1981 U. S. Supreme Court law guarding the NN's Court's EXCLUSIVE inherent unrestricted civil authority, without any limitations by Congress warranting abandoning pre-1981 US law. **MacArthur 2005** at 945; *McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164 (1973) [[48]]; *Warren Trading Post Co. v. Arizona Tax Comm'n*, 380 U.S. 685, 690 (1965); *Williams v. Lee*, 358 U.S. 217, (1959) [[49]]);

(s) made the NN Court authority a judiciable question, when it was not for a century; [[50]]

(t) violates International Treaties that warrant NNCourts exercising self determination, and equal protection of its laws [[51]] and individual civil rights protections as human rights the US verifies in its Magna Carta and Declaration of Independence,;

---

[47] The 2007 *MacArthur* court finds these defendant officials were the State for the first time since Lord Coke in England. *Cook County, Illinois v. U.S. ex rel Chandler*, 538 U.S. 119 (2003), without an en banc hearing. *Burlington Northern & Santa Fe Ry. Co. v. Burton*, 270 F.3d 942 (10th Cir. 2001).

[48] *McClanahan* (cited in *Montana* at *564)* ( (1) ambiguities in Treaties and Statutes to be read in support of the Navajo (at 174-176); (2) Court is to look to Treaties and relevant statutes limiting State government (at 172); (3) Arizona [like Utah] has an Enabling Act and Constitution disavowing any authority over Indians (at 175); (4) Congress has provided a means whereby States can have authority over Indians (at 177-178); (5) "To be sure, when Congress has legislated on Indian matters, it has, most often, dealt with the tribes as collective entities. But those entities are, after all, composed of individual Indians, and the legislation confers individual rights." (at 180) (7) checkerboarded land is within the exterior boundaries of the Navajo Nation authority at 175). (emphasis added)

[49] *Williams v. Lee*, 358 U.S. at 220-221 (footnote omitted).("Congress has . . . acted consistently upon the assumption that the States have no power to regulate the affairs of Indians on a reservation. . . . Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction….." )

[50] MacArthur 2005 fn. 93. See also *Ex Parte Crow Dog*, 109 U.S. 556, 557, 572 (1883); *Lone Wolf v. Hitchcock*, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903) and *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 67-68, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

[51] The United States Treaty of Guadalupe Hidalgo (1848)(promising U.S. federal exclusive authority over Navajo Nation (see Treaty of 1849 sec. 1);

(u) violates the current doctrines of self determination by *de facto* replacing them with the old 'assimilation' or 'allotment' and 'termination' doctrines Congress and the Executive branches consistently renounced since at least about 1933's new deal era;

(v) applies a repealed allotment act case to the Aneth Extension, it was not intended for.

(w) converts the well understood lack of felony criminal authority over non Indians in Indian Nation Courts to a similar prohibition for civil authority, such that redress ability for injuries by the U.S. is justified by the Treaty of 1868 Article I;

(x) *eliminates* NN Court authority to protect itself from those who would violate its rules and undermine its ability to protect its citizens.

(y) extinguishes NN law proportionally to how many non Indians are in its borders.

69. Plaintiffs had only ONLY Court Congress and the Executive recognizes for their legal injuries. Without that Court, there is no other Court for them. See, 25 USC 1321-1326, *Williams* and its progeny (no state law), and *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55, 67-68, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)( US has no required statutes for US court authority over Indian Courts, save 25 U.S.C. 1303, habeas relief).

70. *Montana*'s application directly interferes with NN judicial machinery, i.e. ability to issue subpoenas OR summons, etc.- within BIA approved NNRCP for NN police powers.

71. *Montana* is applied after the final finding of liability, post judgment. *See, Santa Clara, supra.* The amount claimed should not matter, but it seems to here.

---

U.N. International Covenant on Civil and Political Rights (UNICPCR) 2200A(xxi) OF 16 Dec. 1966 entry into force **23 March 1976**, in accord with article 49. UNICPCR Part 1 Art. 1, sec. 3. The Courts [in the United States] shall apply the laws to 'everybody' equally. Part III, Art. 14 Sec. 1. *Supported by the **1975** Indian Self Determination Act Pub. L. 93–638, § 2, Jan. 4, 1975, 88 Stat. 2203.) codified as 25 U.S.C. 450 et seq; the 1968 ICRA (25 U.S.C. 1302(8) and 1301(2); 1321-1326)and Utah Enabling Act and Constitution Art. III 'ordinance' disclaimer provisions.*

72. Congress recognizes NN Courts as the sole authority in its borders by Executive Agreement, government to government, contracts, drafted by the US, memorialized in statutes 25 USC 450(a)-(n), that demands the ICRA be applied.

73. The wording and intent of ICRA has been reviewed by the Supreme Court as intending 'persons' in 25 USC 1302(8), Indian and non Indian alike Congress rejected the words any 'Indian'. *Santa Clara Pueblo, Dodge, supra.*

74. The NN gave its Treaty protections to all 'people' in its NN Bill of Rights enacted prior to the ICRA that does upholds it. The Executive mandates its meaning Ap. Pg. 122.

75. *Montana* facially, and as applied, violates all the foregoing law, and thus, the US Court violates its fiduciary duty to the NN and by treaty, and U.S. law, and these Plaintiffs, and patients, and NN Court, who are now denied all their damage relief.

76. All documents attached in the Appendix are incorporated herein.

## XI. COUNT FOUR: FIFTH AMENDMENT TAKINGS

77. All NN parties, judges, are US citizens. All have had their Article VI treaty protections taken for Article III US Court purposes, contrary to all statutes, executive orders, memorandums, agreements, and pre 1981 Supreme Court law.

78. The Congressional and Executive design in their network of laws to protect NN Court sovereignty, allows no exceptions, or other courts where Plaintiffs can seek redress. 5th Amendment taking this power requires compensation, *Mitchell, supra.*

79. The US abandonment of these Plaintiffs' with proven injuries, takes all NN Plaintiffs' NN legal property rights to their judgments protecting their names, reputations, professions, livelihoods, interferes with their professional licenses, (i) for the public purpose of diminishing NN legal authority, (ii) for carrying out a *de facto*

termination or assimilation policy Congress and the Executive have rejected and repudiated by every other known law, (iii) makes all a target of non Indians who would civilly injure anyone within Indian Nations without liability, (iv) takes all rights of injured to insurance policy payments if the injured is an Indian under MacArthur 2001 and 2002, giving unjust enrichment for insurers contracting with non Indians - and – (v) all without the Nation being a party to the suit- *impossible, if the Nation were a named party Miner Electric, Co. Inc. v. Muscogee Nation*, No. 06-5216 (10th Cir. 09/19/2007);

80. The *Montana* application also breaches the 1849 promise that others would not invade the NN and harm or treat persons malevolently.

## XII. COUNT FIVE: BREACH OF ACCORD AND SATISFACTION

81. The BIA, by mutual agreement, regularly examines the NN courts for compliance with the BIA contract. No failings by the NN Court was found for this case or any other cases. The agreements demands that the NN comply with the law are satisfied in accord with the intent and meaning of the agreement parties.

82. If *Montana* does apply, then the exceptions fit here for public endangerment, noxious use of the property, the thousands of contracts for med. Services, etc. and didn't.

## XIII. STANDING

*82.* ***Standing*** for Plaintiffs to bring their claims and others' claims as designated by the NN Court in their behalf is founded in BIA approved NN law, customs and traditions, and also 25 USC §111. NN Court Plaintiffs need not be an organized unit to claim jurisdiction under the Indian Tucker Act. *See Tee-Hit-Ton Indians v. United States*, 120 F. Supp. 202, 204 (Ct. Cl. 1954) (holding that the descendants of the earliest known native inhabitants of an area of land in southeastern Alaska satisfied the "identifiable

group" requirement). , NN law fully covers non Indian spouses under customs and traditions, but NN common law is also mandatory under the ICRA. Further injury to one tribal member by NN customs injures the Tribe. Claims are under both Tucker Acts.

*83.* Standing for money damages requires three factors be met. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Allen v. Wright,* 468 U.S. 737, 751 (1984). First, plaintiffs must suffer "injury in fact" – an invasion of a legally protected interest palpable and concrete and particularized, as well as actual or imminent. *Lujan,* 504 U.S. at 560. The law says only NN Courts can hear Plaintiffs' claims, Plaintiffs duly sought relief under the only US recognized law of the area, obtained injunctive relief, and a finding of final liability for the Defendants, and are now foreclosed by injunctive order, from seeking any further enforcement in the NN Court.

*84.* Second, the injury must be "'fairly... traceable to the challenged action of the defendant.'" Id. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976)). The only Supreme Court since 1968's ICRA, to examine US Court jurisdiction to hear or limit Indian Nation Court actions, save habeas relief under 25 USC 1303, found that a US court would usurp power not granted to it by Congress if the Courts did so. *See, Santa Clara, and Dodge, supra.* All prior Supreme Courts held a Tribal Court's jurisdiction is non judiciable. *Fn. 50 supra.*

*85.* Third, a favorable decision for the plaintiff must be likely to redress the injury. Id. at 561. Plaintiffs money damages sought are commensurate with NN customs and traditions, the NN Constitution, US jury and settlement awards, under NN and US

restorative justice [[52]] principals. Plaintiffs' case satisfies each of these elements. The plaintiffs allege that they have suffered a concrete and actual injury in fact – financial harm. Am. Compl. ¶¶18-22, app. Pg. 91-92. This financial harm was allegedly caused by the United States' breach of its fiduciary and contractual duties to protect Indians under good faith and fair dealing (breached) and guardianship principals supporting NN self determination as found in the above legal network. Awarding the plaintiffs damages is likely to redress that harm by making them whole under NN standards. Id.

## XIV DAMAGES PRAYER FOR RELIEF

*86.* Wherefore, based upon the foregoing, these Plaintiffs make demand upon the US as follows: On March 1, 2000 the NN Court finding contempt if the orders were not obeyed, determined fines of $10,000 a day, and $1000 from each defendant, daily, until the NN Court's actions were enforced, to be paid to the NN Court (App. Pg. 115) . The amount due this day for the $10,000 a day fines is $30,850, 000.00. The NN named ten defendants. The amount owed for all $30,850, 000.00. This total is $61,700,000.00 as of Aug. 12, 08. This amount is consistent with US EPA fines.

*87.* The amount asked for by the Plaintiffs in the first amended complaint is for " each of the defendants, both jointly and severely [sic], be ordered to pay damages to the plaintiffs in the amount of $18,000,000 USD (Eighteen Million Dollars)" . Plaintiffs, under NN custom of looking out for all other Navajo members, prayed for the following relief, App. Pg. 92, "$6,000,000 USD (Six Million Dollars) *to be paid directly to Montezuma Creek Clinic*..." The total for the First Amended Complaint is

---

[52] "It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 1 Cranch 137, 147 (1803) (citing 3 Blackstone Commentaries 109).

**$24,000,000**.00 dollars. The total amount of money damages that Plaintiffs could seek from the NN Court is a Total **$85, 220, 000.00 as of Aug. 12, 2008.**

*88.* Plaintiffs also pray for payment of all attorneys fees and costs, beginning on the date the January 1, 1998 as yet to be determined at the end of this Court proceeding.

*89.* Plaintiffs also respectfully pray for this Court to grant all relief as is fair in equity and is just under the law.

So signed this 14th of August, 2008

Susan Rose Susan Rose

Susan Rose (Utah Bar no. 7985)
9553 South Indian Ridge Drive
Sandy, Utah 84092
susan_rose@comcast.net
(801) 572-3363; (801) 674-9304

**CERTIFICATE OF SERVICE**

Service on the United States is to be made by this Court.